UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**THOMAS A. LANDRY,**                                    Chapter 13
    Debtor                                         Case No. 08-18590-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the Debtor's Motion to Strike with Prejudice Objection to Exemption filed by Elizabeth Haartz, individually and Elizabeth Haartz and Walter E. Davis II, as Trustees of the Elizabeth Haartz Revocable Trust (collectively "Haartz"). Through his Motion to Strike, the Debtor asserts that Haartz's Objection to his declaration of homestead, which he claimed pursuant to Mass. Gen. Laws ch. 188, § 1, with respect to property located at 67 Phillips Avenue, Unit 67, Norwood, Massachusetts (the "property"), fails to meet the specificity required by Fed. R. Civ. P. 8 made applicable by

Fed. R. Bankr. P. 7008.[1]

The Court heard the Motion to Strike on October 29, 2009 and afforded Haartz an opportunity to amend her Objection within 30-days to set forth a cogent legal theory as to why her Objection should be sustained, as well as supporting legal authority. The issues presented are whether Haartz sustained her burden with respect to her Objection to the Debtor's claimed homestead exemption, and whether the Court should grant the Debtor's Motion to Strike.

Based upon the Objection, the Supplemental Objection, as well as the record of proceedings in the Debtor's case and the adversary proceeding commenced by Haartz, the Court finds that the material facts necessary to decide the Objection and the Motion to Strike are not in dispute and that the Court can treat the contested matter as ripe for summary judgment. *See* Fed. R. Civ. P. 56(c) made applicable to this proceeding by Fed. R. Bankr. P. 7056. The Court finds that Haartz did not sustain her burden and, therefore, shall enter an order overruling her Objection and granting the Debtor's Motion to Strike.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 13 petition on November 11, 2008. On Schedule A-Real Property, he listed the property with a current value of $305,000, subject to a secured claim in the amount of $195,080.68. He claimed the property as exempt on Schedule C-Property Claimed as Exempt, pursuant to Mass. Gen. Laws ch. 188, § 1. On the

---

[1] Specifically, the Debtor complains that Haartz failed to provide him with "a short and plain statement" of the Objection showing that she was entitled to the requested relief. *See* Fed. R. Civ. P. 8(a)(2).

same day he filed his Chapter 13 petition, the Debtor filed an Adversarial Motion to Avoid Haartz's lien pursuant to 11 U.S.C. §§ 522(d) and 547. According to the Debtor, Haartz's lien, which was recorded on November 4, 2008, arose out of an ex-parte, post-verdict attachment. The Debtor attached a copy of his Declaration of Homestead, dated October 29, 2008, to his Lien Avoidance Motion, as well as a copy of his deed for the property, showing that he acquired it on June 21, 2006.

Haartz objected to the Debtor's Lien Avoidance Motion, stating a belief that "the equity in the subject property as to which the Debtor is claiming a homestead exemption may have been illegally obtained" and that "[t]o the extent that the Debtor illegally obtained the equity he is attempting to exempt, said equity may not be property of the estate and Haartz' [sic] attachment would be voidable." She did not challenge the form of the homestead or the time it was filed in the Norfolk Registry of Deeds relative to the commencement of the Debtor's bankruptcy case.

Around the same time as she filed her Objection to the Lien Avoidance Motion, Haartz filed a Motion for Relief from Automatic Stay in which she outlined some of the circumstances which gave rise to her claim against the Debtor, a self-employed attorney. According to the parties, the Debtor initially sued Haartz in the Superior Court, Department of the Trial Court, seeking to collect outstanding legal fees incurred in connection with his representation of Haartz in a matter involving the contested sale of stock valued at approximately $20 million pursuant to a contingency agreement which provided that the Debtor was to receive an initial minimum payment of $10,000 with a fee

cap of 1.5 percent of the total recovery. Haartz filed a counterclaim against the Debtor for reimbursement of excessive fees and damages under Mass. Gen. Laws ch. 93A. After a jury trial, Haartz obtained a judgment against the Debtor in the approximate amount of $71,000. Through her Motion for Relief from Stay, she sought authority to continue the litigation to liquidate her ch. 93A claim.[2] The Debtor did not oppose the motion.

On January 20, 2009, Haartz filed the Objection to Exemption, which the Debtor now wishes to strike. Haartz essentially reiterated her argument that the Debtor obtained the property for which he now claims a homestead exemption with the ill-gotten gains he obtained from her. The Debtor filed a Response to Haartz's Objection in which he averred that he sent Haartz the following invoices which she paid within 30 days:

```
03/19/01      $10,000.00
01/09/02        7,139.46
06/25/02       22,736.81
12/30/02       39,103.12
01/08/04       43,084.68
              $122,064.07
```

Haartz did not dispute this allegation.

Additionally, the Debtor, who, as noted above, acquired his property on June 21, 2006, submitted copies of his investment reports for his Ultra Service Account at Fidelity Investments. He indicated that he withdrew $100,000 from his account in June of 2006 to buy the property. The reports showed the following:

---

[2] The Debtor admitted that the judgment arose with respect to a fee dispute in which Haartz paid him $121,064.07. The jury awarded $50,000 to the Debtor and approximately $72,000 to Haartz. On or about April 16, 2009, the Superior Court entered judgment on the Ch. 93A claim. The Debtor has appealed.

4

| DATE | ENDING NET VALUE |
|---|---|
| November 1, 2002-November 30, 2001 | $132,062.00 |
| January 1, 2002-January 31, 2002 | $135,360.00 |
| December 1, 2003-December 31, 2003 | $124,421.32 |
| December 1, 2004-December 31, 2004 | $133,311.41 |
| December 1, 2005-December 31, 2005 | $135,499.41 |
| June 1, 2006-June 30, 2006 | $11,890.36 |

Thus, the Debtor established that his investment account did not substantially change in value between November 30, 2001 and June 1, 2006 after he began receiving legal fees from Haartz.

On February 17, 2009, Haartz filed a two-count complaint against the Debtor under 11 U.S.C. § 523(a)(2) and (a)(4). The parties then filed a joint motion to consolidate the Objection to Exemption with the adversary proceeding. In the joint motion, Haartz agreed to file an Amended Objection to Exemptions within two weeks. In his Motion to Strike Haartz's Objection, the Debtor observed, and the dockets in both the adversary proceeding and main case reflect, that Haartz did not file an amended Objection within the window contemplated in the joint motion. On July 23, 2009, counsel to the Debtor wrote to Haartz's counsel seeking clarification within one week as to whether Haartz would be filing an amended Objection. Receiving no response, the Debtor, on August 6, 2009, filed the Motion to Strike which is now before the Court. The Debtor attached to the Motion to Strike an affidavit in which he stated and affirmed that he withdrew $100,000 from his Fidelity Ultra Service Account on June 7, 2006, which sum he used for a down payment on

5

the property he purchased on June 21, 2006 for $317,250 with financing in the amount of $217,000. In addition to his affidavit, the Debtor attached copies of his Fidelity investment reports, the deed pursuant to which he obtained title to the property, and a copy of the first page of the mortgage, as well as affidavits authenticating the documents.

In response to the Motion to Strike, Haartz stated, without any evidentiary or legal support, that "the debtor's Motion does not put to rest issues arising under the debtor's claim of exemptions." The Debtor, in turn, reiterated the arguments he made in support of his Motion to Strike, namely that the Objection lacked specificity.

Following the hearing, Haartz filed her Supplemental Objection in which she stated that, if she proved that the excessive fees were used to create equity, she could "invoke the remedy of placing a constructive trust on the Debtor's property rights, citing Davis v. Cox, 356 F.3d 76 (1st Cir. 2004). She did not submit any testamentary or documentary evidence to alter or contradict the evidence submitted by the Debtor.

**III. DISCUSSION**

Pursuant to Fed. R. Bankr. P. 4003(c), "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." According to the court in In re Maylin, 155 B.R. 605 (Bankr. D. Me. 1993), "the rule reflects the Code provision making a debtor's properly listed exemptions presumptively valid." Id. at 614. Thus, section 522(l) provides: "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l)

6

Haartz, citing Davis v. Cox, 356 F.3d 76 (1st Cir. 2004), suggests that the Debtor's property is subject to a constructive trust. Under Massachusetts law,

> [A] constructive trust "is imposed not because of the legally inferred intention of the parties but because the court concludes that the person holding the title to the property, if permitted to keep it, would profit by a wrong or would be unjustly enriched, having acquired the property through fraud, mistake, breach of duty, and the like." Restatement (Third) of Trusts, § 7 cmt. d; Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 788, 625 N.E.2d 1352 (1994) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched."). While a resulting trust, like an oral express trust, is intended to give effect to the parties' intent, a constructive trust is typically employed in the absence of any intention of the parties to create a trust, whenever title to property is found in one who in fairness ought not to be allowed to retain it. Barry v. Covich, 332 Mass. 338, 342, 124 N.E.2d 921 (1955).

In re Charles River Press Lithography, Inc., 338 B.R. 148, 160-61 (Bankr. D. Mass. 2006).

In Davis v. Cox, the United States Court of Appeals for the First Circuit considered imposition of a constructive trust in circumstances distinctly different from those present in the instant case, namely a contested divorce proceeding and subsequent bankruptcy. In the first instance, the First Circuit determined that state law was the source for the imposition of a constructive trust. It stated:

> [U]nder Maine law, Davis did indeed possess at bankruptcy an equitable interest in the Advest IRA such as prevented it, by virtue of 11 U.S.C. § 541(d), from becoming at that moment a part of Cox's bankruptcy estate. In reaching this result, we proceed narrowly on the remedial theory of constructive trust. We need not decide, and indeed think it inappropriate for a federal court to decide without first seeking more specific guidance from Maine's Supreme Judicial Court, whether Maine law, broadly applied, gives to non-owner spouses in ordinary circumstances after commencement of a divorce case, but before entry of judgment, an inchoate equitable interest in marital assets owned by the owner spouse. Such a general holding would

> have profound implications for Maine's law of creditors' rights in a variety of factual situations different from the present. As the issue is one of first impression in Maine, Maine's highest court rather than a federal court should be the first to plough such new territory.

356 F.3d at 84.[3]

In her pleadings, Haartz failed to establish that the Superior Court imposed a constructive trust in her favor prior to the commencement of the case or that circumstances exist which would warrant the imposition of a constructive trust. Although Haartz has filed a complaint under 11 U.S.C. § 523(a)(2) and (a)(4), and, although the Superior Court

---

[3] The First Circuit added:

> The special equities favoring Davis on the facts of this particular case are, however, compelling. The state divorce court's award of most of the Advest IRA to Davis was granted, following a four-day trial, expressly in order to restore her to the position she would have been in had not Cox misapplied marital assets to his own use in disobedience of the court's preliminary injunction and the interim order-a pattern of misconduct that commenced well before Cox filed for bankruptcy. Because of Cox's disability and support needs, attachment of the IRA does not appear to have been an option open to Davis prior to bankruptcy. 14 M.R.S. § 4422(13)(E). . . . The Maine court ultimately found Cox in contempt and, as a remedy, ordered payment to Davis of $65,250 from the Advest IRA, a remedy that will have meaning if Davis had an equitable interest in the Advest IRA prior to Cox's filing of his petition for bankruptcy but not otherwise. On the present facts, especially given Cox's contemptuous behavior before the filing for bankruptcy, we think a Maine court, applying Maine law, would in these circumstances rule that, by the time he filed for bankruptcy, Cox held the Advest IRA upon a constructive trust for his spouse, Davis, subject to the divorce court's ultimate determination of its ownership.

Davis v. Cox, 356 F.3d 76, 84-85 (1st Cir. 2004). *See also* In re Haase, 306 B.R. 415, 421 (B.A.P. 1st Cir. 2004).

judgment, including the ch. 93A damages, is on appeal, neither of those circumstances, in and of themselves, suggest that a constructive trust is an appropriate remedy for the Debtor's liability for receipt of excessive compensation pursuant to a written contingency agreement, particularly in view of the provisions of 11 U.S.C. § 522(c) and the First Circuit's decision in Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677 (1st Cir. 1999), *cert. denied,* 527 U.S. 1036 (1999).

Section 522(c) provides in pertinent part the following:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except–

> (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in section 523(a)(5));
>
> (2) a debt secured by a lien that is--
>
>> (A)(I) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>>
>> (ii) not void under section 506(d) of this title; or
>>
>> (B) a tax lien, notice of which is properly filed;
>
> (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or
>
> (4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount,

>   award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

11 U.S.C. § 522(c). Section 522(c) does not except debts determined to be nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(4). Likewise, it does not except debts arising from breach of contract, unjust enrichment or Ch. 93A.

In the Debtor's case, Haartz has had multiple opportunities to substantiate the grounds for her Objection to the Debtor's homestead exemption. Despite the opportunity to do so, she failed to file an affidavit to contest the facts set forth in Landry's affidavit, which he supported with reference to his Fidelity Ultra Service Account statements, deed and mortgage. Additionally, Haartz failed to submit any evidence from the state court proceedings or even cite cases other than Davis v. Cox to support her position. Haartz's vague assertions are insufficient to satisfy her burden under Rule 4003(c).

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Motion to Strike.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 16, 2009
cc: John F. Davis, Esq., Laurel E. Bretta, Esq.